# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| ALEXANDER BOHANNON, | ) |
| :--- | :--- |
| | ) |
| Petitioner, | ) |
| | ) CIVIL ACTION NO. 08-0036-WS |
| v. | ) |
| | ) CRIMINAL ACTION NO. 05-0128-WS |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## ORDER

This matter is before the Court on the petitioner's motion to vacate. (Doc. 191). The respondent submitted a response, (Doc. 196), the petitioner declined the opportunity to reply, (195), and the motion is now ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion to vacate is due to be denied.

## BACKGROUND

The petitioner and his co-defendant were indicted for a carjacking that resulted in death, in violation of 18 U.S.C. § 2119. They were also charged with knowingly using, carrying and discharging a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). (Doc. 13). A jury found them guilty on both counts. (Doc. 123). The Court sentenced the petitioner to two consecutive life terms, (Doc. 136), and the Eleventh Circuit upheld the convictions and sentences. (Doc. 188).

The single ground of the motion to vacate is that trial counsel was ineffective because he did not present the petitioner's mental retardation "as a defense to specific intent." (Doc. 191, ¶ 13).[1]

---

[1] The motion suggests the Court "disallow[ed]" evidence of mental retardation. (*Id.*, ¶ 14). This is simply incorrect; no such evidence was ever offered.

**DISCUSSION**

To establish ineffective assistance of counsel, "a petitioner must show that counsel's performance was deficient and that he was prejudiced by that deficiency. A petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." *Hagins v. United States*, 267 F.3d 1202, 1204-05 (11th Cir. 2001) (internal citations omitted); *accord Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001); *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990). Deficient performance requires a showing that counsel's performance is "objectively unreasonable and falls below the wide range of competence demanded of attorneys in criminal cases." *Id.*[2] Prejudice requires a showing of a "reasonable probability that the result of the proceedings would have been different had counsel not performed deficiently." *Id.*[3]

"Conclusory allegations of ineffective assistance are insufficient." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (internal quotes omitted). Furthermore, "it is axiomatic that the failure to raise nonmeritorious issues does not constitute

---

[2] A petitioner "must prove deficient performance by a preponderance of competent evidence, and the standard is reasonableness under prevailing professional norms." *Gallo-Chamorro v. United States*, 233 F.3d 1298, 1303 (11th Cir. 2000). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that *no* reasonable lawyer, in the circumstances, would have done so. ... Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) (emphasis added) (internal quotations and citations omitted).

[3] A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." *Gallo-Chamorro*, 233 F.3d at 1303-04. A petitioner must show that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Cross*, 893 F.2d at 1292 (citation omitted).

ineffective assistance" of counsel. *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994). Rather, an attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

The Insanity Defense Reform Act "preclude[s] ... the use of non-insanity psychiatric evidence that points toward exoneration or mitigation of an offense because of a defendant's supposed psychiatric compulsion or inability or failure to engage in normal reflection." *United States v. Cameron*, 907 F.2d 1051, 1066 (11th Cir. 1990). However, "Congress distinguished such evidence from psychiatric evidence to negate specific intent and did not intend to exclude the latter in all instances." *Id*. The petitioner argues that evidence of his mental retardation is admissible under *Cameron* and that counsel was ineffective in failing to introduce it. (Doc. 191, ¶ 16).

Evidence of diminished capacity is potentially admissible only if the crime is one of specific intent and not general intent. *United States v. Ettinger*, 344 F.3d 1149, 1153, 1161 (11th Cir. 2003). Section 2119 does require specific intent, in particular, the intent to cause death or serious bodily harm. *E.g., United States v. Lumley*, 135 F.3d 758, 759 (11th Cir. 1998). The petitioner's proffered evidence thus passes this threshold inquiry.

However, "psychiatric evidence ... will only rarely negate specific intent ...." *Cameron*, 907 F.2d at 1067. Indeed, "[o]nly in the rare case ... will even a legally insane defendant actually lack the requisite mens rea purely because of mental defect." *Id*. at 1066. "[M]ost often, that defendant [proffering psychiatric evidence] is speaking of an incapacity to reflect or control the behaviors that produced the criminal conduct," and "[s]uch evidence is not psychiatric evidence to negate specific intent and should not be admitted." *Id*. (internal quotes omitted).

To be admissible, the proffered evidence must "focu[s] on the defendant's specific state of mind at the time of the charged offense." *Cameron*, 907 F.2d at 1067. In

particular, "[e]vidence that a defendant lacks the *capacity* to form mens rea is to be distinguished from evidence that the defendant *actually* lacked mens rea. [citation omitted] While the two may be logically related, *only the latter is admissible* to negate the mens rea element of an offense." *United States v. Westcott*, 83 F.3d 1354, 1358 (11th Cir. 1996) (emphasis added). Thus, psychiatric evidence to negate specific intent "is admissible ... when such evidence focuses on the defendant's specific state of mind at the time of the charged offense." *Cameron*, 907 F.2d at 1067.

Before such evidence may be admitted, the Court must play a vital role as gatekeeper. "Because psychiatric evidence (1) will only rarely negate specific intent, (2) presents an inherent danger that it will distract the jur[y] from focusing on the actual presence or absence of mens rea, and (3) may easily slide into wider usage that opens up the jury to theories of defense more akin to justification, [citation omitted], district courts must examine such psychiatric evidence carefully to ascertain whether it would, if believed, support a legally acceptable theory of lack of mens rea." *Cameron*, 907 F.2d at 1067 (emphasis and internal quotes omitted).

The petitioner has failed to show that evidence of his mental retardation would be admissible under *Cameron*. First, he argues that his mental retardation rendered him "incapable" of forming the specific intent to cause death or serious bodily harm, (Doc. 191, ¶ 12), but *Westcott* teaches that evidence of incapacity to form specific intent is not admissible. Rather, only evidence of an actual absence of the necessary specific intent at the moment of the defendant's action is permissible, and the petitioner does not even purport to have such evidence.

Second, the petitioner asserts that mental retardation "does affect the ability to ... form specific intent," (Doc. 191, ¶ 11), but he offers no evidence or authority that this is necessarily so, commonly so, or so in his case. "'[S]pecific intent' means the intent to accomplish the precise criminal act that one is later charged with." *United States v. Ortiz*, 318 F.3d 1030, 1036 n.10 (11th Cir. 2003) (internal quotes omitted). Here, that means

only that the petitioner must have intended to cause death or serious bodily harm, and there is nothing before the Court which could allow it to conclude that the petitioner's mental retardation prevents, or even could prevent, him from forming the primeval intent to hurt someone. *See United States v. Lawson*, 459 F. Supp. 2d 1192, 1198-99 (M.D. Ala. 2006) (while evidence of mental retardation might be relevant if "the criminal activity was too complex for the defendant to intend specifically to carry it out," it is not admissible when "the nature of the crime ... does not appear to require the workings of a sophisticated mind").

The petitioner argues that his mental retardation is relevant in that it reflects he is easily influenced, is unable to take care of his personal needs and safety, is impaired in his social interaction and behavior, and is limited in his ability to communicate. (Doc. 191, ¶ 15). While these items could help explain *why* a mentally retarded individual might form a specific intent to harm another person, they do not suggest any *difficulty* in doing so. Offering such an explanation for his behavior would directly contravene *Cameron* by "open[ing] up the jury to theories of defense more akin to justification" or excuse.

In short, the evidence the petitioner claims his lawyer should have presented was not admissible to begin with. Because it was inadmissible, counsel did not perform deficiently by failing to offer it. *Bolender*, 16 F.3d at 1573.

Even had evidence of the petitioner's mental retardation been admissible, counsel acted reasonably in selecting a different defense strategy. There was strong evidence that the petitioner fought with the victim outside the vehicle and, just before the co-defendant fired, called "shoot him" or words to that effect. The defendants then fled in the victim's vehicle. Under such circumstances it would have been very difficult to argue effectively that the petitioner did not have the intent to inflict death or serious bodily harm on the victim, regardless of his mental retardation.

Instead, defense counsel presented a theory that the shooting occurred at a time when the defendants' only objective was to rob the victim, with the objective changing to

taking his car only after the shooting. Under such a scenario, the intent to kill or harm would not result from a carjacking, as the pattern charge requires, but from a botched robbery. There was promising evidence to support this view. First, the victim's girlfriend, listening on a cell phone, heard the petitioner tell the victim to "give it up," with the victim responding, "I ain't got nothing" — an enigmatic response if the goal of the encounter was to steal the victim's car, but meaningful if it referred to something hidden on the victim's person or elsewhere. Second, counsel introduced evidence that the victim was a convicted drug dealer, which could suggest that "give it up" referred to drugs or drug money. Third, during their struggle the victim shot the petitioner in the leg, which interfered with his ability to flee the scene and could explain a post-shooting desire to take the vehicle for escape purposes.

"[A] court must not second-guess counsel's strategy," and "reliance on [one] line of defense to [the] exclusion of others is [a] matter of strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.14 (11th Cir. 2000) (en banc). An attorney's trial strategy must be upheld if it is a reasonable one. *Id*. at 1315 n.16. To make this determination, "we need not attempt to divine the lawyer's mental processes underlying the strategy." *Id*. If the course that counsel took is reasonable, "it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of [his selected course] was not a deliberate choice between" courses of action. *Id*.

Defense counsel's strategic decision to focus on showing the killing took place during a robbery rather than a carjacking was eminently reasonable, because it was supported by many available facts and would negate an element of the prosecution's case. Because evidence of mental retardation would not have been admissible, pursuing that course would not have been a reasonable defense strategy. Even if it were a reasonable strategy, under *Chandler* this would not show deficient performance because counsel's selected strategy was also reasonable.

The petitioner does not argue that counsel should have pursued both tracks, but any such argument would fail, again because the one track counsel pursued was itself reasonable. Moreover, "[c]ounsel is not required to present every nonfrivolous defense ...." *Chandler*, 218 F.3d at 1319. On the contrary, "[s]tacking defenses can hurt a case[, and] [g]ood advocacy requires 'winnowing out' some arguments ...." *Id*. Stacking a mental retardation angle atop counsel's botched robbery angle would have devastated the defense, because it would illogically assert that the petitioner could not form the intent to kill or seriously harm the victim and yet could form the intent to rob him, leaving the jury to conclude that the defense was playing games with it. Especially since the botched robbery defense was patently much stronger than the mental retardation defense, rejecting the latter in favor of the former could not possibly be unreasonable.

Nor can the petitioner satisfy the prejudice prong of his ineffective assistance claim. As a threshold matter, he has failed even to *allege* prejudice, and such a failure is independently fatal. *E.g., Hill v. Lockhart*, 474 U.S. 52, 60 (1985); *Thomas v. Wainwright*, 784 F.2d 1103, 1107 (11th Cir. 1986). Even had he done so, for the reasons set forth above there is no reasonable probability that, had counsel introduced evidence of the petitioner's mental retardation, he would not have been convicted.

"Unless the motion [under Section 2255] and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. However, an evidentiary hearing is not required in every case. For example, no evidentiary hearing is required:

- Where the petitioner's claim is "patently frivolous," *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989);
- Where the claim is "based upon unsupported generalizations," *id.*;
- Where the petitioner has not "allege[d] facts that, if true, would entitle him

- to relief," *Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002);
- Where the facts alleged are not "reasonably specific [and] non-conclusory," *id*. at 714-15;
- "[W]here the petitioner's allegations are affirmatively contradicted by the record," *id.* at 715;
- Where the petitioner's version of the facts has already been accepted as true, *Turner v. Crosby*, 339 F.3d 1247, 1274-75 (11th Cir. 2003); and
- Where "the district court can determine the merits of the ineffectiveness claim based on the existing record." *Schultz v. Wainwright*, 701 F.2d 900, 901 (11th Cir. 1983).

As is evident from the Court's discussion above, the petitioner's claim is subject to one or more of these exceptions. Accordingly, the petitioner is not entitled to an evidentiary hearing.

## CONCLUSION

For the reasons set forth above, the petitioner's motion to vacate is **denied**. Judgment shall be entered accordingly by separate order.

DONE and ORDERED this 26th day of February, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE